IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 12, 2020

**STATE OF TENNESSEE v. JOSIAH NIXON**

**Appeal from the Circuit Court for Houston County**
**No. 42CC1-2017-CR-3      David D. Wolfe, Judge**

_____

**No. M2019-00912-CCA-R3-CD**
_____

The Defendant, Josiah Nixon, was convicted by a Houston County Circuit Court jury of sale of methamphetamine, a Class C felony. *See* T.C.A. § 39-17-434 (2018). He received a sentence of six years' confinement. On appeal, the Defendant contends that (1) the evidence does not support his conviction, (2) the trial court erred in allowing a "still-frame" image from a video recording into evidence, and (3) the trial court erred by sentencing the Defendant to six years' confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER JJ., joined.

Stanley W. Brooks, Clarksville, Tennessee, for the appellant, Josiah Nixon.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Ray Crouch, District Attorney General; and Talmage Woodall, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Houston County grand jury indicted the Defendant for sale of methamphetamine after the Defendant sold methamphetamine to a confidential informant (CI), who recorded the transaction.

At the trial, the CI testified that he had an extensive criminal history, including drug and theft convictions, including a felony theft conviction. He explained that he agreed to become a CI while incarcerated. The CI said he was released on bond and began working as a CI. On cross-examination, the CI said that his bond was reduced as a part of his agreement with the State to work as a CI.

The CI testified that he assisted Detective Tim Stavely in setting up a controlled drug buy with the Defendant on July 8, 2016. The CI explained that he knew the Defendant was someone from whom he could purchase drugs. The CI said that he contacted the Defendant through text messages. The CI read to the jury the following July 8, 2016 text message exchange:

**CI:** What up its bruce you good?

**Defendant:** Yea

**Defendant:** Call me

**CI:** Im on way from Dickson ima get the whole bro

**Defendant:** Wow ok prob have to come to house

**CI:** Any way you could meet me at county line gas station in the ridge its like 5min from Carlisle ill throw ya an extra 10 for gas, im bout to be coming into erin

**Defendant:** Shit im not even home yet gonna have to change my tire on truck

**CI:** Shit! Ok the ol lady has to have the van for work at 815

**Defendant:** Take tn ridge to Carlisle Road make a right and make a left on the first Road

**CI:** Ok just got into erin had to stop for gas tryin to rush my ass off bro

**Defendant:** Right working on thos tire

**Defendant:** Just head this way ill come yours as soon as I get this done

**CI:** Ok

**Defendant:** Where u at? Im rolling that wau. U in your van?

The CI explained that when he sent a text message to the Defendant that said he was "going to get the whole," he was referring to a gram of methamphetamine. The CI said that these text messages led up to the controlled drug buy with the Defendant and that they were sent on the same day as the drug buy.

The CI testified that he met with Detective Stavely prior to the drug buy and that he had probably worked between ten and twenty cases as a CI. The CI explained that during these meetings, Detective Stavely searched the CI and the CI's car. He said Detective Stavely gave him a key fob, which contained a recording device. The CI explained that Detective Stavely informed the CI what drugs the CI would be purchasing and from whom he would be purchasing the drugs. The CI stated that Detective Stavely gave him the money for the controlled drug buy and that the CI was compensated by the Houston County Sheriff's Department after he successfully completed the drug buy.

The CI testified that the key fob recorded the transaction with the Defendant. The recording was played for the jury. The video recording shows the CI driving to a location and parking his car. A man approaches the driver's side of the CI's vehicle. The CI hands the man cash through the open driver's side window, and the man hands the CI something. The man leaves, and the CI drives away. The prosecutor paused the video recording when the man was visible outside of the CI's car window, the CI identified the man as the Defendant, and a still-frame photograph of the Defendant taken from the recording was entered into evidence.

The CI testified that the drugs he received from the Defendant were packaged in a "blue baggie." He said that he met Detective Stavely at a church after the transaction and handed him the drugs.

McEwen Police Department Detective Tim Stavely testified that he previously worked for the Houston County Sheriff's Office. Detective Stavely said that the CI assisted him with approximately twenty drug buys in the spring and summer of 2016. Detective Stavely stated that he worked with the CI to set up a controlled drug buy with the Defendant in July 2016. Detective Stavely explained that he gave the CI a key fob containing a video camera and that this was the camera the CI used on all of the controlled buys. Detective Stavely explained that during the drug buy, he communicated with the CI by cell phone.

Detective Stavely testified that the CI set up the drug buy with the Defendant through text messages. He explained that the CI contacted him and informed him that the CI could purchase methamphetamine from the Defendant. Detective Stavely said that he met with the CI before each buy and searched the CI and the CI's car. He explained the purpose of the searches was to ensure that the CI did not already have any drugs. Detective Stavely said that he had never found drugs on the CI or in the CI's car. He gave the CI $120 to purchase the methamphetamine. Detective Stavely said that the CI met the Defendant at a hardware store and that Detective Stavely waited nearby in the event something went wrong. Detective Stavely explained that the location of the drug buy changed because the Defendant saw Detective Stavely. He said that after the CI conducted the drug buy, the CI met him and gave him the drugs the CI obtained from the Defendant. Detective Stavely said that the CI provided him with the Defendant's license plate number and that Detective Stavely used his phone to find an image of the Defendant's driver's

-3-

license photograph. He explained the CI reviewed the photograph and confirmed that the Defendant sold the drugs. Detective Stavely took the drugs from the CI and sent them to the Tennessee Bureau of Investigation (TBI) for testing. Detective Stavely stated that he paid the CI $100 for each drug buy.

TBI Special Agent Forensic Scientist Laura Cole testified that she tested the substance collected in this case and that it was 0.41 gram of methamphetamine, a Schedule II controlled substance.

Upon this evidence, the jury convicted the Defendant as indicted. This appeal followed.

## I. Sufficiency of the Evidence

The Defendant contends that the evidence does not support his conviction. Specifically, he argues that the evidence only supports a conviction for casual exchange of drugs. The State responds that the evidence is sufficient to support the Defendant's conviction.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see State v. Vasques,* 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Id.* at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given to the evidence . . . are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall,* 976 S.W.2d 121, 140 (Tenn. 1998); *see also State v. Sutton,* 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 39-17-434 provides, in pertinent part, that it is an offense for a defendant to knowingly sell methamphetamine. A sale is "a bargained-for offer and acceptance, and an actual or constructive transfer or delivery" of the substance. *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002). Methamphetamine is a Schedule II controlled substance. T.C.A. § 39-17-408 (b)(4).

Tennessee Code Annotated section 39-17-434(b) provides that "[i]t is an offense for a person to knowingly . . . casually exchange methamphetamine." Casual exchange of methamphetamine is a lesser included offense of sale of methamphetamine. *See State v. Marvin Harold Dorton, II*, No. E2013-01580-CCA-R3-CD, 2014 WL 3893363, at \*13 (Tenn. Crim. App. Aug. 11, 2014) (holding that "casual exchange is a lesser included offense of the charged offense of sale or delivery of a controlled substance").

Viewed in the light most favorable to the State, the evidence is sufficient to support the Defendant's conviction. Text messages between the CI and the Defendant and the CI's testimony reflect that the CI set up a meeting with the Defendant to purchase methamphetamine. Detective Stavely gave the CI $120 and a recording device. The video recording showed the CI drive to a location and exchange money for a substance with the Defendant. The CI gave the substance to Detective Stavely, explained that he purchased the drugs from the Defendant, and identified a photograph of the Defendant. TBI Agent Cole concluded that the substance was methamphetamine, a Schedule II controlled substance. Regarding the Defendant's argument that the evidence only supports a conviction for casual exchange of methamphetamine, there is sufficient evidence from which a rational jury could find the Defendant guilty beyond a reasonable doubt of the sale of methamphetamine. The Defendant is not entitled to relief on this basis.

## II. Photographic Evidence

The Defendant contends that the trial court erred by allowing as evidence a still-frame image taken from the video recording. Specifically, the Defendant argues that the State did not give notice or allow the defense to inspect the photograph before it was entered into evidence in violation of Tennessee Rule of Criminal Procedure 16(a)(1)(F). The State responds that the court did not err in admitting the photograph of the Defendant.

At the trial, a video recording of the drug transaction was played for the jury. The prosecutor paused the recording in order to display an image of the Defendant's face. The CI identified the Defendant, and a still-frame photograph of the image was marked as an exhibit. Defense counsel objected to the admission of the photograph because he had not received a copy before the trial. Defense counsel said that the State had provided a copy of the recording from which the photograph was taken. The trial court in its ruling reasoned that there was no discovery violation because the Defendant had received a copy of the recording before the trial and overruled defense counsel's objection. The photograph was entered into evidence.

Tennessee Criminal Procedure Rule 16 addresses the parties' rights and obligations during the discovery process. Rule 16(a)(1)(F) provides that

> Upon a defendant's request, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible

objects, buildings, or places, or copies or portions thereof, if the item is within the state's possession, custody, or control and:

>    (i)    the item is material to preparing the defense;

>    (ii)   the government intends to use the item in its case-in-chief at trial; or

>    (iii)  the item was obtained from or belongs to the defendant.

"A trial court has wide discretion in fashioning a remedy for non-compliance with a discovery order, and the sanction should fit the circumstances of the case." *State v. Downey*, 259 S.W.3d 723, 737 (Tenn. 2008); *see* Tenn. R. Crim. P. 16(d)(2).

Here, the Defendant received before trial a copy of the video recording from which the still-frame photograph was obtained. The Defendant had the opportunity to inspect the recording and to use it to prepare for the trial. There was no discovery violation, and the Defendant is not entitled to relief on this basis.

### III. Sentencing

The Defendant contends that the trial court erred by imposing a sentence of six years' incarceration. The Defendant argues that the sentence is excessive and should be reduced. The State responds that the trial court acted within its discretion when it sentenced the Defendant.

At the sentencing hearing, Tennessee Probation and Parole Officer Teresa Yvonne Giez testified that she was the presentence report investigator. She explained that she interviewed the Defendant and that he did not take responsibility for his actions. She stated that the Defendant had prior convictions for evading arrest, casual exchange, a Schedule II drug crime, and driving under the influence. Officer Giez said that the Defendant also had a possession of a firearm conviction in Arkansas, a malicious destruction of personal property conviction in Michigan, and two federal convictions in Wisconsin for being a felon in possession of a firearm. A Michigan judgment reflecting the Defendant's conviction for malicious destruction of personal property, a Wisconsin judgment reflecting the Defendant's two federal firearm convictions, and the Defendant's presentence report were entered into evidence. Officer Giez explained that it might be necessary for the Defendant to work with a mental health provider. She said that he had received his GED and had completed one year of college.

Mid-Cumberland Misdemeanor Probation Officer Lance Parker testified the Defendant was placed on probation on Janary 25, 2017, for a three-year sentence in Stewart County for convictions for theft, evading arrest, and simple possession. Officer Parker said that the Defendant obtained new charges in Stewart County approximately two months

after pleading guilty to the charges for which he had received probation. A violation of probation warrant was issued on April 7, 2017, and the Defendant's probation was revoked. The revocation order was entered into evidence.

Rebecca Anderson, the Defendant's mother, testified growing up, the Defendant had learning disabilities. She said that he had dysgraphia and was colorblind. Ms. Anderson stated that the Defendant was diagnosed with ADHD and received medication. She explained that the Defendant was subsequently treated by a psychiatrist, who diagnosed the Defendant with bipolar disorder. The Defendant began taking a new medication. Ms. Anderson said that the Defendant's new medication had negative side effects including fatigue and weight gain. She said that the Defendant was bullied in elementary school and had difficulty making friends. Ms. Anderson stated that she believed the Defendant needed counseling and "rehab." She said that she had never considered the Defendant to be dangerous. She explained that the Defendant was a "very good" mechanic. She said that she and her husband were always available to help the Defendant become a productive member of society. Ms. Anderson stated that she believed the Defendant had the ability to be rehabilitated.

The Defendant testified that his drug addiction had gotten "out of hand" and that he was glad he was arrested. The Defendant apologized for his behavior. He explained that he planned to begin a long-term drug rehabilitation program at the time he was arrested and stated that he wanted to improve himself.

The trial court considered the Defendant's presentence report, testimony of witnesses, arguments from the State and defense counsel, exhibits of prior convictions, and the evidence presented at the Defendant's trial. The court also considered the nature and characteristics of the Defendant's criminal conduct and the mitigating and enhancement factors. Specifically, the court found that the Defendant had a previous history of criminal behavior and that the Defendant failed to comply with the conditions of a release before trial or sentencing. T.C.A. §§ 40-35-114 (1),(8). The court found that one mitigating factor applied because there was no serious bodily injury or harm in this case. *Id.* § 40-35-113(1). The court found that the enhancement factors outweighed the mitigating factor.

The trial court found that the Defendant was on probation when he was arrested in this case. The court considered that the Defendant had been on probation but failed to report to a probation officer and his probation had been revoked. The court also noted that the Defendant had two prior federal felony gun convictions. The court acknowledged that the Defendant did not obtain this new conviction while on probation but noted that the Defendant did not successfully comply with the terms of his previous probation. The court found that measures less restrictive than confinement had recently been applied unsuccessfully to the Defendant. The court considered the Defendant's social history and his mental condition but found that the Defendant could take medication to treat his mental condition. The court ordered the Defendant to serve six years of confinement.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103, -210; *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors is reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id*.

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *Ashby*, 823 S.W.2d at 168; *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant who otherwise qualifies for probation or alternative sentencing to incarceration when:

(A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2014); *see Trotter*, 201 S.W.3d at 654. A trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, and (6) the deterrence value to the defendant and others. *See*

*State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (concluding that the same factors used to determine whether to impose judicial diversion are applicable in determining whether to impose probation); *see also State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

The sale of methamphetamine is a Class C felony. T.C.A. § 39-17-417(b)(2)(A) (2018). A Range I sentence for a Class C felony is three to six years. *Id.* § 40-35-112(a)(3). The Defendant received a within-range sentence of six years' incarceration.

The trial court considered the arguments and evidence presented at the trial and the sentencing hearing. The court reviewed the presentence report, the Defendant's criminal history, and the appropriate enhancement and mitigating factors. The court found that previous measures less restrictive than confinement were unsuccessful with the Defendant. The record supports that the court properly applied the purposes and principles of the Sentencing Act in determining the Defendant's sentence and in denying probation. The Defendant is not entitled to relief on this basis.

Based upon the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE